UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| G. M. a Minor, | ) | |
| TRISTA MCCOY individually, and in her | ) | |
| capacity as Next Friend to G.M., a Minor, | ) | |
| RICKEY MCCOY individually, and in his | ) | |
| capacity as Next Friend to G.M., a Minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 3:13-cv-00156-RLY-WGH |
| | ) | |
| PETSMART, INC., | ) | |
| RAINBOW EXOTICS, INC., | ) | |
| SLAM VENTURES, LTD. d/b/a The | ) | |
| Mouse Farm, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs, Trista McCoy, Rickey McCoy ("Plaintiffs" or "the McCoys"), as parents of G.M., brought the present lawsuit against Defendants, PetSmart, Inc., Rainbow Exotics, Inc. ("Rainbow"), and Slam Ventures, Ltd. d/b/a The Mouse Farm ("The Mouse Farm") after G.M. suffered from rat bite fever allegedly contracted from the pet rats his mother bought at PetSmart. The Defendants each moved for summary judgment. The Plaintiffs have opposed each motion, and the court heard oral argument on the motions on August 17, 2015. After considering the motions, supporting briefs and arguments of the parties, the court now **GRANTS** the Defendants' motions.

1

**I.      Background**

On September 9, 2011, Trista McCoy purchased two pet rats from a PetSmart store located in Evansville, Indiana, to give to their children. PetSmart purchased the rats from Rainbow World, who purchased the rats from their breeder, The Mouse Farm. At the time of the purchase from PetSmart, Trista signed a Pet Sales Record & Customer Contract. Trista did not read the Customer Contract, which contained warnings in regards to several types of animals that may be purchased at PetSmart.

In March 2012, G.M. began complaining of fever, rashes, and joint pain. His pediatrician, Dr. Pamela Rogers saw him at that time. Dr. Rogers consulted the Red Book Atlas of Pediatric Infectious Diseases to investigate G.M.'s symptoms. She did not feel qualified to diagnose rat bite fever; as such, she referred G.M. to Riley Children's Hospital ("Riley") in Indianapolis, Indiana. On April 6, 2012, G.M. was admitted to Riley based upon his complaints of fever, rash, and joint pain. Dr. Kathleen Boyd diagnosed G.M. with rat bite fever[1] and discharged him on April 7, 2012.

---

[1] Rat bite fever is the common name for Streptobacillus Moniliformis ("S. Moniliformis"). According to Dr. Sean Elliot, rats carry S. Moniliformis as a normal part of their flora. (Affidavit of Dr. Sean Elliott (Dr. Elliott Aff.) ¶ 9). Rate Bite Fever can be transmitted in the absence of a rat bite, by exposure to the rat's saliva, urine, or feces. (Dr. Sean Elliott Expert Report, Filing No. 97-4, at ECF p. 3). The presence of S. Moniliformis can be found in 10% to 100% of healthy domesticated or laboratory rats, while wild rats appear to carry the bacteria from 50% to 100% of the time. *See* Dr. Sean Elliott, *Rat Bite Fever and Streptobacillus Moniliformis*, 20 Clin. Microbiol. Rev. 13, 16 (Jan. 2007). Most rats do not show signs or symptoms of the disease. *Id.* When a rat is "shedding" S. Moniliformis, it can be transmitted to humans and detected through testing. (Dr. Elliott Aff. ¶¶ 11,13). Nevertheless, not all humans who come into contact with a rat who is shedding will contract Rat Bite Fever. (Dr. Elliott Aff. ¶ 14). A negative test for S. Moniliformis only indicates that a rat is not shedding at that time. (*Id.* at ¶ 12).

Plaintiffs filed the present lawsuit against PetSmart, Rainbow World, and The Mouse Farm as a result of G.M.'s diagnosis of rat bite fever. Specifically, Plaintiffs seek damages under the following theories: (1) products liability, (2) common law negligence, (3) emotional distress, and (4) future damages. Defendants, moving separately, each filed for summary judgment.

## II. Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

### A. The Necessity of an Expert Witness

Defendants argue that an expert witness is necessary to show causation in this matter. Plaintiffs disagree. To prove their claims, Plaintiffs must establish general causation and specific causation. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010). Plaintiffs argue that general causation – that rat bite fever can be contracted from rat's bite or scratch − can be shown through Defendant PetSmart's expert, Dr. Elliott. In response, Defendants note that Plaintiffs failed to designate Dr. Elliott as a witness, and

3

as such, they are not required to make him available to testify. Presuming Defendants choose this strategy, Plaintiffs would have no manner in which to show that a pet rat could have caused G.M.'s illness. Thus, Plaintiffs would not be able to establish general causation as required by their claims of product liability and negligence.

Even if Plaintiffs could establish general causation, they still must establish specific causation – G.M. contracted rat bite fever from his pet rats – through expert testimony. As the Seventh Circuit has held, "when there is no obvious origin to any injury and it has multiple etiologies, expert testimony is necessary to establish causation." *Id.*; *see also Higgins v. Koch Dev. Corp.*, No. 14-2207, 2015 WL 4394895 (7th Cir. Jul. 20, 2015). Further, under Indiana law, "questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." *Armstrong v. Cerester USA, Inc.*, 775 N.E.2d 360, 366 (Ind. Ct. App. 2002) (quoting *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000)).

Here, the evidence is undisputed that rat bite fever has multiple potential etiologies, including rodents such as, rats, mice, gerbils, and invertebrates, such as mosquitos, ticks, mites, or fleas that have fed on an infected rodent. (Supplemental Affidavit of Dr. Sean Elliott ¶¶ 10-11). Further, the evidence establishes that G.M. was bitten by a tick at or around the time he contracted rat bite fever. Plaintiffs respond with a supplemental affidavit provided by G.M.'s treating physician in an attempt to eliminate the tick bite as the cause of the infection. (Affidavit of Pamela Rogers, M.D. ¶ 4) (stating that "she observed no redness or rash at the site of the tick bite, and the patient had no

complaints of joint pain, which would typically be signs and symptoms of a tick-borne illness").

Dr. Rogers has admitted she is not qualified to diagnose rat bite fever and has offered no explanation as to how she is qualified to testify as to the causation of that disease. (Deposition of Dr. Rogers 9:6-16). Thus, she cannot eliminate the tick bite as a possible cause of G.M.'s disease. Even if this evidence would be enough to eliminate the tick bite as a cause or to create a material question of fact regarding the tick bite, Plaintiffs have not eliminated the several other etiologies provided by Dr. Elliott. Therefore, the court finds that expert testimony is needed to show causation. Without such testimony, Plaintiffs are unable to carry their burden on the products liability claims and negligence claims. As such, the court must grant summary judgment in favor of Defendants on those claims.[2]

### B. Damages Claimed by the Parents

The only remaining claims are the damages sought by Trista and Rickey McCoy for the damages related to G.M.'s illness, specifically $8,276.70 in past medical expense for Trista, an unspecified amount of future medical expenses, and over $30,000 in lost wages for Trista and an unspecified amount of lost wages for Rickey. Additionally,

---

[2] Even if the court found an expert witness was not necessary, the Plaintiffs cannot show that the rat, if considered a product, is defective. Plaintiffs conceded at oral argument that the rats, should they be considered a product, did not suffer from a manufacturing defect or a design defect. Further, Plaintiffs cannot bring a failure to warn theory because they did not read the warning. *See Gardner v. Tristar Sporting Arms, Ltd.*, No. 1:09-cv-0671-TWP-WGH, 2010 WL 3724190, ** 6-7 (S.D. Ind. Sept. 15, 2010) (granting summary judgment on a failure to warn claim because the plaintiff did not read the warnings, reasoning that this admission prevents plaintiff from proving causation.).

Trista alleges she has anxiety and stress, which has resulted in her suffering from gastroparesis, gastrointestinal issues, and worsened irritable bowel syndrome. PetSmart argues that the McCoys are barred from recovery for separate claims of medical expenses, lost wages, and emotional distress because these damages were not pled in the Second Amended Complaint ("Complaint") and, in any event, are derivitave of G.M.'s claims. The McCoys respond that "[w]hether or not these damages were pled with sufficient specificity in her complaint is a decision for this Court." The McCoys fail to point the court to any specific areas of the Complaint to show that such damages were sufficiently pled.

A review of the Complaint reveals that McCoys failed to bring any allegations concerning their lost wages, personal medical expenses, or emotional and physical pain that they suffered. Rather, with regard to damages, the Complaint only states that the McCoys have incurred expenses by paying for G.M.'s medical care and treatment. Without any factual allegations or claims pertaining to the McCoys, the court cannot find that the above statements put the Defendants on notice that the McCoys are alleging damages related to their own medical bills, lost wages, or emotional distress. As such, the court finds that any claims for these damages are barred. Additionally, the McCoys cannot recover for any of G.M.'s medical bills, past or future, incurred by the McCoys because no claim survives which would entitle G.M. to such relief.

## IV. Conclusion

In conclusion, the court finds that an expert witness is necessary to testify to causation. Because Plaintiffs do not have an expert qualified to testify to such matters, the court must grant summary judgment in favor of the Defendants. Further, any claims made by the McCoys are barred. Accordingly, the court **GRANTS** Defendants' motions for summary judgment (Filing Nos. 80, 84, 89).

**SO ORDERED** this 28th day of August 2015.

```
_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana
```

Distributed Electronically to Registered Counsel of Record.